Good morning. May it please the court, my name is John Shackleford. I'm counsel for the petitioner, Mr. Gonzalez-Gonzalez, and I would like to reserve four minutes for rebuttal, please. Mr. Gonzalez asked this court to find that the immigration judge erred in holding that he did not merit cancellation of removal because his deportation would cause insufficient hardship to his U.S. citizen children. However, Mr. Gonzalez proved that his deportation would impose a significant economic burden on his children and cause them incalculable emotional suffering. So, counsel, I understand your arguments. You made you made them to the to the agency as well. What specifically do you think, where did the district court go wrong? And I'll, well, I'll let Judge Smith ask his question, I'm sure, which is what the standard of review is, but tying that in, you know, where did he go wrong on looking at these facts? Your Honor, I think our our briefing rested on the idea that the immigration judge failed to take into account the suffering as it was presented in a whole, as a as an amalgamated whole, and gave insufficient weight just to the emotional aspect that would be incurred by these children who had a very close familial relationship with their father. Well, counsel, the immigration judge balanced the fact that the two boys were in school, thought they might be able to work part-time, but then noted that there were several other sources of revenue from the adult children that could contribute to the family's well-being. And maybe you can help me with how we apply the rule in Wilkinson here, in terms of, are you asking us to reweigh the evidence that's the agency adjudicated? No, Your Honor, just to look at the facts as they are decided, even those that are clearly erroneous, as the BIA demonstrated and admitted, the the trial court did in fact make some errors in calculating the amount of... Beyond the error of part-time versus full-time employment by McDonald's on behalf of the mother, what other error are you alleging occurred? Your Honor, such that there was insufficient evidence for the immigration judge to arrive at the conclusion, the factual conclusion, that the children would be able to commit to, the adult children, excuse me. What about the sources of revenue from the adult siblings that were both employed? Actually, there were two brothers and a sister, if I remember correctly. Yes, Your Honor, and it would be our position that that was speculative in nature, given that those were adult children, they were under no obligation to contribute to the welfare of the petitioners. Weren't the two adult brothers still living in the family home? I believe that is what the record reflects, yes, Your Honor. So how is it error for the immigration judge to conclude that they could help contribute to the financial well-being of the family in the absence of the father? Your Honor, I suppose you could look at it as a situation with roommates that have no obligation to support the others. Certainly, the family members are different from roommates, counsel. Yes, Your Honor. So I'm still, go ahead. Go ahead. I didn't want to interrupt you. I'm still struggling with where the immigration judge erred, other than the McDonald's employment situation. Well, and I think that's especially the question, in that, in your briefing, you do not attack the IJ's correction to the wife's income. You don't challenge that the two children could work part-time, and you never challenged the discrepancy in whether the daughter can help. I mean, there's nothing in the brief that does any of that, which seems to be the toughest part of your argument, given Judge Tallman's question. That's the worry. I wanted you to focus on that, because I thought his question was a good one. I'm sorry, Your Honor. What is the question? Well, his question was, how did he err? Really, how did he err? And I said, how did he err, especially when you don't even attack the IJ's correction on the wife's income. You don't attack the challenge that the two children could work part-time. You don't challenge the discrepancy on whether the daughter could help. Those aren't in the brief anyplace. Your Honor, from my review of the brief, it was my understanding that those factual allegations were considered by the petitioner to be clearly erroneous, that they were not sufficiently supported. Well, it didn't seem to me to be challenged in the brief at all. So how do we avoid reweighing the evidence? It seems to me that's what you're asking us to do, when those items of evidence were not challenged below. Your Honor, the statutory framework governing these proceedings essentially prohibits any inquiry as to the validity of the factual findings. Therefore, we are left with the standard of review and considering whether the applicable legal standard was correctly applied to the facts that were induced at hearing. And what is the standard of review in light of the Supreme Court's decision in the Wilkinson case? Thank you, Your Honor. Well, and as we know, thanks to the government's recent filing, we do understand now that the Third Circuit resolved that case on remand from the Supreme Court, finding and employing the substantial evidence test, which is a highly differential standard of review to resolve the agency's hardship determination. Our position would be two. One... You would agree that the substantial evidence standard is the test that remains, notwithstanding the Supreme Court's Wilkinson decision? That is what the Third Circuit Court found, yes, Judge. Do you think we should follow them? No, Your Honor, I do not. The positioner's position is, one, that that question need not be decided today, because regardless of the standard of review, the conclusion is the same, and that is that Mr. Gonzalez did merit a favorable ruling of cancellation of removal, such that this Court need not even determine the standard of review today. And second of all, if it... Go ahead. I didn't mean to interrupt. And the second position would be that, in keeping with the Supreme... with the Ninth Circuit's tradition, that de novo review should be applied to mixed fact... mixed questions of fact and law, and that substantial evidence should be... What's the legal question that you're challenging here? When you say it's a mixed question of law and fact, I mean, what's the legal hook for that? Your Honor, for this particular question, it is nearly the application of a very broad and complex standard, the legal standard in the statute of exceptional, extremely unusual hardship, which is frankly fairly ambiguous, doesn't have a lot of guardrails. It invites a lot of speculation, and it invites a lot of inconsistency at the trial level. What's your... What's the difference between speculation and adverse inferences, if you will, or not even adverse inferences, but inferences from the record? Like, you know, you seem to be arguing that I.J. was speculating that Edwin would be able to work to provide for his family. Where's that line between speculation? Why do you say that falls on the line of speculation versus just an inference from an I.J. who heard all the evidence? Your Honor, I would say as far as speculation goes, because this is a forward-looking analysis, we have to rely on what was adduced at hearing. I would... I would say... Does the legal standard require a forward-looking analysis? I mean, the legal standard, as you noted, is, you know, exceptional and extremely unusual hardship if he leaves. So, I mean, it can't be the case that just because the legal standard looks forward that, therefore, everything is pure speculation. That's true, Your Honor, and that is the same case. That is the same as in the case of, in the matter of Rufino, it's a Ninth Circuit case, offers a bankruptcy analog in which the Ninth Circuit reviewed de novo, a three-part, fact-intensive question about undue burden and whether an individual would suffer undue burden if her school loans were not discharged. So that is exactly the kind of case where the Ninth Circuit precedent holds that the court should imply a de novo review and reserve substantial evidence findings review for factual findings in the court. In retrospect, I'm sitting here in 2025. This case came up during this time period. In retrospect, one of the children has already reached the age of 21, and the other child will be 21 in June. In fact, June 7th. Why isn't this case moot? The guy's been here. He's been working. He's been doing what he has to do. The children will all be raised. They'll all be over 21 in June. Why don't we just say this case is over? Your Honor, at that point, it's true after the qualifying vote. I think at this point, I mean, the child is almost 21 now. He has been able to do everything he wanted to give all of the support, financially and otherwise, to this child, to both children, till they were over, till one is over the age of 21, which is the statutory age. The other is nearly there. This is a moot case. Why don't we just go on about our way? Your Honor, I think it is a useful exercise in looking back at this case and being able to review. What's the use of a useful exercise when the guy, I mean, he doesn't have to do anything anymore. He doesn't have to, he has no, he couldn't bring this petition now. That is true. He would no longer have a qualifying relative as his children have aged out and would no longer be considered qualifying relatives under the statute. However, if he had been granted cancellation or removal back in 2019, he would have become an unlawful permanent resident and would continue living here with his family permanently. And I see that. If we grant your petition today and issue a decision in the next month or so, although it should come sooner than that, what would prevent that decision from being mooted on June 7 when the minor turns 21? Your Honor, I think you'll have that in pretty much every case that's taking a long time to get before this court. All we can do is focus back on the facts that they were... But we lose cases on grounds of mootness all the time. An inmate is released from custody and therefore the habeas corpus case evaporates. I would say it would only be not moot to my client who would be otherwise eligible to receive a green card, Your Honor. So you think that even though the case is moot as of June 7, he would still be eligible to receive a green card? Your Honor, if the court were to find that the application of the legal standard in this case was misapplied, then yes, I do you over. You did the right thing. You answered our questions. That's always a good thing. And so we'll give you a couple minutes for rebuttal. Thank you. Good morning again, Your Honors. May it please the Court. Jessie Carlson for the government. Your Honors, this court should deny the petition for review. After considering all of the evidence in the aggregate, the agency correctly concluded that petitioner in this case did not meet the requisite exceptional and extremely unusual hardship standard. That standard is very strict. Congress designed it to be such. It's a very high bar, meaning that the hardship has to be above and beyond what somebody might face normally with the removal of a family member. So while the facts of a case may be sympathetic, it is a very high bar to be reached. And in this case, the facts simply don't merit. So can I hit you on the standard of review? Is that right that on remand in Wilkinson, the court applied substantial evidence? I'm sorry, Your Honor. Well, what do you think the standard of review is? So Your Honor, Wilkinson talks about a deferential standard of review. The Supreme Court did not articulate specifically substantial evidence. However, as indicated in the letter that the government filed, the Third Circuit did weigh in on that recently. And the government would advocate for a standard of review. That is something like... And the Third Circuit said substantial evidence. That is correct. And in accordance with Wilkinson and the Supreme Court, substantial evidence does seem to be a reasonable standard for this case. Is there any meaningful difference? A lot of ink was spent on the standard of review. Is there a meaningful difference in this particular case, depending on which standard of review? In this particular case, there really wouldn't be. The facts are very weak, unfortunately. But, you know, even assuming a different standard of review, whether it's abusive discretion, substantial evidence, the petitioner simply doesn't meet the standard. But since we do have additional instruction from other courts, you know, that substantial evidence does seem to be appropriate. It's also the standard that's applied in a majority of these immigration cases that are assessing factual issues. And this determination is essentially a factual issue at its core. Certainly, it is a mixed question, as the Supreme Court indicated. But when you really, if you're looking at this particular inquiry that has been set forth here, which appears to be, you know, petitioner seems to be taking issue with how the IJ weighed the facts, which is something that that part of the determination is not reviewable. Well, it's really easy for the petitioner to take a little bit of inquiry into what the IJ did, because the IJ erred when the IJ said the wife did not work full-time. The IJ said there were four sons. The IJ said four incomes. BIA says a daughter, but the IJ doesn't reference the daughter. And the IJ is talking about four sons. I mean, there are factual differences between what the IJ said and what the BIA said. Your Honor, there is some discrepancy there. So, if we're going to try the standard review, doesn't that weigh in? Unfortunately, Your Honor, it doesn't change the assessment. I think Patel discusses that in particular. The Supreme Court talked about that. But I think that the main situation here that we're looking at is, even if there was some discrepancy with those factual determinations, and in this case it was not material, and I think it was actually corrected when you look at the record later on, that specific determination is still something that this Court would not have jurisdiction to review. The jurisdiction arises with the application of the facts to the law. And in this case, talking about the incomes of the family members, as Your Honors pointed out, the children are much older now, but even if they were not, there are several family members in this household that could contribute income. And even Petitioner himself, if he's removed to Mexico, that doesn't mean that he could no longer provide income or work in a different location. That is something that is always... Did the BIA consider that? I don't believe that was discussed. So we can't really consider that, right? Yeah, it probably would not be appropriate to consider it here, but I think the point is there are multiple sources of income, and that is something the Board and the IJ did talk about. And I think that, you know, the IJ can make reasonable inferences about what kind of income might be provided in a family setting. It is of some concern to me. I'm a standard review man. My good colleagues already said you probably get a question from me about that. I'm a standard review man, but I read through this and there was just something about this that just did not sit good. Number one, they got this husband who's a Mexican. They got the mother who's a Mexican. They got four children all are Mexicans. They all could be deported. They all could go through the same thing we're going through here. And yet the BIA and the IJ take the incomes of illegal Mexican immigrants in the United States and say they're the ones that are going to support the two United States citizens, and we're going to get rid of the other immigrant who is also illegally in the United States. That when you have one immigrant you're sending away, but the only reason you're not going to be able to or you say he should be sent away is because other illegal immigrants are going to work harder to support the American kids. That's what this case says. Is that what the law is? Well, Your Honor, I can't opine on the immigration status of all of the members of the family. You can opine on that that's in the record because that's how I got this information. Right, Your Honor. But in this particular case, as far as the status of where all of that stands, I don't recall that being in the record specifically. Well, it is in the record. It's right there. You know which ones are Mexican. You know which ones are illegal. That's in the record. All of these are illegal immigrants. But I mean, Your Honor, if they, I don't know if any of them, I don't recall it saying whether they're in actual removal proceedings or just a mere fact that you're relying on their income as illegal without saying, well, they've got another thing that will get them out of it or all of that in order to now deport their father who is the one who's really providing the support. That seems to me to be just a totally difficult position for the government to take. I understand that may that may seem to be the case. But unfortunately, given all of those things are factual determinations that were decided by the agency based on the whole the whole record and looking at, you know, the extremely high standard. When you said those things were decided by the agency, the agency didn't consider, I think what Judge Smith is referencing, which is the fact that others, some of these family members were here illegally as well, correct? I don't recall that in the actual decision. I think the agency was primarily considering whether or not the whole set of circumstances and facts rise to the level of the extremely and exceptionally. Well, did it need to? Did they, I mean, is this relevant to the question? I mean, Judge Smith is raising some interesting equitable issues. Is it relevant to what we have to decide for purposes of this particular petition? Your Honor, I don't believe it is relevant. I believe that is an underlying factual consideration. Do you have a good case for that? I look for one. As far as deciding the underlying, well, I mean, just looking at the the court's determination is the application of the law to the facts. And the factual determinations have been decided by the agency. And, you know, Wilkinson, as one case, I mean, that that makes that very clear. And I think that there is language there that talks about the fact that if there are disputed facts, those are determinations that are made by the agency and those are unreviewable. The application of law to the facts would pertain to a set of undisputed facts. And the facts that the agency decided are, in fact, undisputed facts, meaning it does address the situation as far as what it viewed as it pertains to the level of hardship that the individuals would suffer in this case. And as was pointed out earlier, these these children are now, they have now essentially aged out or will very soon. They are also able to, were able to support themselves and provide income and along those lines. And that is something the agency did reference. Can you address that real quickly with the time you have the mootness question that was raised? Because what happens on June 7th when they've all aged out? Do we still have a capacity to decide this case? You know, we could theoretically decide it could still be pending on June 7th. If we were to rule, let me phrase it this way, if we were to rule for the petitioner right now, would he get meaningful benefit beyond June 7th? Well, Your Honor, I hate to speculate what would happen if the case were sent back to the agency, but it seems evident that that may be a futile exercise if the individuals would no longer be eligible. Because we couldn't grant relief. Ultimately, we can't grant him relief. We cannot grant him what he's requesting. The most we could do is remand it back to the agency and then it would be pending on June 7th. Correct. You can remand it back if you believe that's necessary, but at that point the government would assert that that would not be a useful exercise, especially in this case given the age of the children and the issues I've already talked about regarding the pieces of jurisdiction that the court would have. Let me return to the standard of review one last time. Is the government's position that we apply substantial evidence and enhanced deference to the factual findings by the immigration judge and the board as they inform the exercise of discretion by the Attorney General? I'm sorry, I didn't hear the last part. I apologize. I've got some allergy issues, so my hearing is a little less than desirable. Let me try it again. Is it the government's position that the standard of review is substantial evidence in the record to which we must give great deference in establishing the factual record, which then informs the exercise of the Attorney General's discretion as to whether or not to grant relief? Well, the government definitely agrees that a deferential standard of review should apply here, as Wilkinson points out. Substantial evidence, something like that, does seem to be the appropriate standard that should be applied as it is in other similar immigration cases, which would mean that, you know, unless there are facts that would compel a contrary conclusion, we would ask the court to deny the petition. Okay. Okay, thank you. Thank you, Your Honors. We'll give you two minutes for rebuttal. Thank you, Your Honors. Your Honors, regarding that standard of review question, again, our point would be, one, that it's not necessary to resolve in this matter. However, also the application of Wilkinson, which I don't believe I answered correctly before, is that there is a mention and a discussion about the fact-intensive inquiry for this legal standard. However, when the court at the very end of the decision says this should be a differential standard of review, that was not necessary to its holding. That was thrown away at the second-to-last sentence in the case, so it's not binding. But either standard is deferential, right? I mean, even you're arguing, you're arguing for abuse of discretion? Your Honor, we would ask, we would, we suggest that that binding Ninth Circuit case law informs this court to continue with de novo review over mixed questions of fact and law and reserve substantial evidence. Oh, what about Magana Magana? That, that seemed to apply to abuse of discretion to a mixed question of fact and law. I'm sorry, which case, Your Honor? I thought Magana Magana. Your Honor, I'm not, I'm not familiar with that case. That was just, that was just last year, but okay. Your Honor, and I would say that, so as far as mixed questions go, as I mentioned before, in the bankruptcy realm, we have in the matter of Rufino regarding the undue burden test. In immigration, we have Cordova v. Holder in 2013 overruling the BIA's conclusion that petitioners had failed to establish particular social groups, applying a de novo review to the legal standard as it was applied to facts that were, again, reviewed for clear error. And what factors do we apply to, to demonstrate abuse of discretion by the Attorney General? Your Honor, we would be looking for a de novo review standard where you would be looking... A de novo review of what? I mean, you're asking us to revisit the decision by the Attorney General as to whether or not to grant the relief, but how do I do that? If I give substantial evidence review to the facts, what am I comparing those facts to in order to decide that the agency should have granted relief here? Your Honor, that's a great point, that the statute deprives this court of even jurisdiction to consider the facts. There's already great deference built into this entire analysis without even considering what standard of review should be applied. When we're looking at the standard of review applied to facts that this court cannot question, no matter how erroneously decided, we have to see at least that this, that the standard was applied correctly. There aren't a lot of, there's not a three-part test for exceptional extremely unusual suffering. That just doesn't exist. There aren't a lot of... Are there regulations that outline what constitutes extreme and unusual hardship? I'm sorry, regarding... Are there not regulations that, that identify factors to be considered in determining whether the petitioner has shown extreme and unusual hardship? Your Honor, the only one that I'm familiar with is the Board of Immigration Appeals saying that the findings should demonstrate or the evidence should demonstrate something substantially beyond or extreme that would be normally expected in the removal of a close family member, which again is not the same as determining persecution, which this court does de novo when it looks at the facts and says, no, under our precedent, this does count as persecution. The IJ erred here clearly, so that would be our position on that standard of review. Thank you. Okay, thank you. Thank you to both counsel for your arguments in this case. The case is now submitted.
judges: TALLMAN, SMITH, NELSON